UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **PLASMA ARC TECHNOLOGIES, INC.**<br>  Plaintiffs,<br><br><br><br><br><br><br><br><br>VS.<br><br>**HFP CAPITAL MARKETS, LLC;**<br>**GEOFFREY BYRUCH, an individual**<br>  Defendants. | CASE NO:<br><br>COMPLAINT FOR DAMAGES AND<br>INJUNCTIVE RELIEF AND<br>DEMAND FOR JURY TRIAL; SUMMONS<br><br>1.  Breach of Non-Circumvent/<br>Non-Disclosure Agreement<br>2.  Injunctive Relief to Enforce<br>Non-Circumvent/Non-Disclosure Agreement |

## COMPLAINT

**COMES NOW** Plaintiff, PLASMA ARC TECHNOLOGIES, INC., (hereinafter also referred to as "PLASMA ARC") by and through its undersigned counsel, and files this Complaint against Defendants joint and severally, as to Defendant HFP CAPITAL MARKETS (HFP), a New York Limited Liability Company, and as to Defendant Geoffrey Byruch (Byruch), an individual and resident of the State of New Jersey, to which Plaintiff does hereby allege against Defendants, and each of them, in furtherance thereof states as follows:

## NATURE OF THE CASE

1. This is a civil action brought forth against defendants for damages as well as injunctive relief for Breach of Non-Circumvent/Non-Disclosure Agreement and Injunctive Relief to Enforce Non-Circumvent/Non-Disclosure Agreement; for the breach of Non-Circumvent/Non-Disclosure agreements triggering liquidated damages clauses, intentional and depreciative interference with

listed contractually protected parties regarding the extraction of precious metal from Plasma-Based Recovery Systems; and such intentional and direct actions and efforts to interfere and derail Plaintiff's contractual relations with third parties such as to obfuscate the fulfillment of pre-existing contractual obligations to Plaintiff to the potential financial benefit of Defendants.

2. That this is an action for damages in the contracted amount of, or in excess of, $5,000,000.00, exclusive of interest, costs, and attorney's fees, arising in Miami-Dade County, State of Florida.

3. All conditions precedent to filing these claims have been waived or have occurred.

4. That as a direct result and proximate cause of Defendants' actions and misconduct, which has caused breach of duly executed contracts between the parties, Plaintiff has been substantially harmed, and continues to suffer injury.

**PARTIES**

5. That PLASMA ARC TECHNOLOGIES, INC., is a Florida corporation duly authorized and registered with the Secretary of State, Division of Corporations, State of Florida, with its principal place of business in Miami-Dade County, Florida, and in the business of designing, building, operating and maintaining advanced thermal processing systems.

6. To the best of Plaintiff's knowledge and belief, Defendant, GEOFFREY BYRUCH (hereinafter referred to as "Byruch"), is an individual, and at all times relevant, held his primary residence in New Jersey. Additionally, upon information and belief, Byruch serves as the Managing Member and CEO of HFP.

7. That HFP CAPITAL MARKETS, is a New York limited liability company registered under the laws of the State of New York, with its principal place of business in at 685 Fifth Avenue, 9th Floor, New York, NY 10022, has no recorded registered agent, and is in the business of investment banking, as well as the brokerage and dealership of registered securities. More specifically, it is engaged primarily in the Broker Dealer Industry; and is a full service investment bank providing a wide range of investment products and investment banking services to a diversified client base that includes corporations, financial institutions, and high net worth

individuals.

8. That the party Defendants are referred to at times herein individually and so designated as such, and also collectively as "Defendants" to include the joint or severable conduct of one or all of the Defendants as such allegations may be so deemed applicative to conduct as alleged against Defendants hereto in general, and that shall be more specifically alleged herefrom as shall be further identified upon discovery proceedings.

## JURISDICTION AND VENUE

9. That jurisdiction is appropriate in this case under 28 U.S.C. § 1332 (a)(1) conferring statutory diversity jurisdiction in federal court as herein requires that the parties be citizens of different states.

10. That at all times relevant to this action, Plaintiff is a Florida based corporation with its principal place of business in Florida and duly registered with the State of Florida, Secretary of State, Division of Corporations.

11. That at all times relevant to this action and to the best of Plaintiff's knowledge, Defendant, Byruch, is a New Jersey resident, owning a home and holding his primary state citizenship in the State of New Jersey.

12. That at all times relevant to this action, Defendant, HFP, is a New York limited Liability Company with its principal place of business and no recorded Registered Agent in New York.

13. That the amount in controversy in this action exceeds $5,000,000.00, USD exclusive of interest and costs, and is between citizens of different states. Thus, this Honorable Court through its statutory authority as herein described has diversity jurisdiction over this action under 28 U.S.C. §1332, and/or actual controversy jurisdiction under 28 U.S.C. §2201 and §2202.

14. That venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (2) because Plaintiff resides and/or maintain its principal place of business in the District and conducts business activities relevant to the cause of action giving rise to this Complaint.

15. That jurisdiction over the Defendants is proper under Fla. Stat. § 48.193, as the contracts at issue in this case were entered in the State of Florida, the Defendants operated, conducted, engaged in, or carried on a business or business venture in Florida, and the Defendant has contractually agreed with Plaintiff to submit to jurisdiction in an action brought in the United States District Court for the Southern District of Florida.  Please see the attached Confidential Non-Disclosure Non-Circumvent Agreement entered into between the parties on January 26, 2010 and April 2, 2010.

16. That the parties have contractually agreed that Florida law shall govern this action.

17. That clause 14 of the Confidential Non-Disclosure Non-Circumvent Agreement entered into between the parties on January 26, 2010 and April 2, 2010 states as follows:

    "14. This agreement shall be governed shall be governed and construed in accordance with the laws of the State of Florida, United States of America, and the parties agree that it is executed and delivered in that state. In the event any legal action becomes necessary to enforce or interpret the terms of this Agreement, the parties agree that such action will be brought in the United States District Court for the Southern District of Florida, and the parties hereby submit to the jurisdiction of such courts."

18. That all causes of action accrued in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

19. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 18 above with the same force and effect as if set forth herein.

20. That on or about September 2009, PLASMA ARC entered into negotiations with the owners of HFP CAPITAL MARKETS which culminated in the execution of a Non-Disclosure/Non-Compete/Non-Circumvent Agreement, dated January 26, 2010; in addition to Purchase and Sale Contracts and Toll Processing Agreements directly associated and procured with a client of theirs subsequently therefrom.

21. That it was on or around that date, executives from HFP CAPITAL MARKETS came to Florida at PLASMA ARC's corporate headquarters to negotiate the above mentioned paperwork.

22. That during negotiations, HFP was seeking advanced thermal processing technologies and services to join it in the servicing of one of its clients; and to this extent Defendant HFP CAPITAL MARKETS sought to join PLASMA ARC into a business relationship with its investment banking client who desired and needed thermal processing equipment and toll processing to repay over seventy-five debenture holders whose promissory notes were coming due and owning.

23. That in order to protect its business interests, business relationships and all confidential information associated with the intended transaction and business services, PLASMA ARC required that HFP execute a <u>Non-Circumvent</u> agreement, on or about January 26, 2010.

24. That in order to protect its business interests, business relationships and all confidential information associated with the intended transaction and business services, PLASMA ARC required that HFP execute a <u>Non-Disclosure</u> agreement, January 26, 2010.

25. That in order to protect its business interests, business relationships and all confidential information associated with the intended transaction and business services, PLASMA ARC required that HFP execute a <u>Non-Compete</u> agreement January 26, 2010.

26. That in order to protect its business interest, business relationships and all confidential information associated with the intended transaction and business services, PLASMA ARC required that HFP execute the Non-Circumvent/Non-Disclosure/Non-Compete (hereinafter also referred to as "NCND") agreement before PLASMA ARC provided HFP with any material information about the transaction, the technology, the scientist, engineers, physicists, technicians, vendors, sub-vendors, fabricators or equipment manufacturers associated with the project.

27. That HFP by and through its Managing Members voluntarily executed the NCND agreement on or about the 26th day of January 2010. (Attached hereto as Exhibit "A").

28. That upon execution of the NCND agreement by HFP, PLASMA ARC provided HFP with highly confidential information pertaining to the identity of the associates, co-ventures, contracted physicists, key vendors, and other highly specialized members of the project team.

29. That months later, and upon expansion of strategically affiliated or contracted "protected" third parties, metal extractors, third party refiners, key vendors, project managers, government

contractors, and Plasma physicists, Plasma Arc decided that these new parties needed to be protected in addition to the original protected parties.

30. That in order to further protect its new strategic affiliated and contracted third parties, business interest, business relationships and all confidential information associated with the intended transaction and business services, PLASMA ARC required that HFP execute another Non-Circumvent/Non-Disclosure/Non-Compete (hereinafter also referred to as "NCND") agreement before PLASMA ARC provided HFP with any further material information about the transaction, the technology, the newly contracted scientists, engineers, physicists, technicians, vendors, sub-vendors, fabricators or equipment manufacturers associated with the project.

31. That HFP by and through its Managing Members voluntarily executed the NCND agreement on or about the 2nd day of April 2010. (Attached hereto as Exhibit "B").

 A. **Non/Circumvent/Non-Disclosure Agreement-1**

32. That upon execution of the NCND agreement by HFP, PLASMA ARC provided HFP with the nature of the business relationships between PLASMA ARC and third parties, contractors, physicists, key vendors, as well as the confidential details of the project, and a list of specific persons that were clearly and absolutely intended to fall under the terms, covenants, and protection of the Non-Circumvent/Non-Compete/Non-Disclosure Agreement (together hereinafter referred to as the "Information").

33. That in the agreement (Paragraph 2) HFP's Managers agreed that it would use the Information solely for the purpose of determining whether to enter into the transaction and not for any other purpose or to pursue their own personal goals or profit objects.

34. That in the agreement (Paragraph 2) HFP's Managers agreed that it would use the Information solely for the purpose of determining whether to enter into the transaction and not for any other purpose or for "*the purpose of competing, directly or indirectly with PAT; including but limited to PAT's team of scientist, plasma physicists, heat recovery engineers, mechanical engineers, power supply sub-contractor, or their respective business entities that they may be associated, affiliated or employed at that would be intended to be utilizing their services for the same or similar business purposes as set forth herein.*"

35. That in the agreement (Paragraph 2) HFP's Managers agreed to "*limit dissemination of and access to the Confidential Information only to persons within Recipient's immediate organization (and not to subsidiary, parent or affiliated entities), and then only to those persons who have a verifiable need for access to the Information for the above-described purposes, and who have separately signed a copy of this Agreement.*"

36. That in the Agreement HFP and by and through its managing members and its CEO, agreed that it would not disclose any of the Information to its representatives unless they first obtained an agreement from its representative that they too would be bound by the terms of the Agreement, and that the managing members agreed that they would accept responsibility for any breach of the Agreement by HFP for any breach of the agreement by one of its employees, agents, and/or representatives.

37. That pursuant to Section 10 of the NCND Agreement, PLASMA ARC and Defendants further agreed that without the prior written consent of PLASMA ARC, HFP would not directly or indirectly, at any time during the term of the Agreement contact or solicit any of the listed non-circumvent parties to enter into a business arrangement with HFP for any reason or purpose for a period of 36 (thirty-six) months.

38. That pursuant to Section 10 of the NCND Agreement, PLASMA ARC and Defendants further agreed that without the prior written consent of PLASM ARC, HFP would not enter into any agreement, arrangement or understanding with any persons regarding a possible transaction involving key personnel, proprietary technology or protected third parties.

39. That Section 11 of the NCND Agreement states the protected third parties.

40. That pursuant to Section 12, there was a contracted and predetermined default remedy of $5,000,000.00 (Five Million Dollars) liquidated damages.

    B. **Non-Circumvent/Non-Disclosure 2**

41. That in the NCND Agreement-2, (Paragraph 2) HFP's Managers agreed that it would use the

Information solely for the purpose of determining whether to enter into the transaction and not for any other purpose or to pursue their own personal goals or profit objects. "*Recipient agrees to hold said Confidential Information, whether previously disclosed or newly disclosed Confidential Information pursuant to the processing agreement aforereferenced, in confidence and not to use any such Confidential Information for any purpose other than the good-faith evaluation of possible business opportunity or relationship and not for the benefit of anyone else or to circumvent PAT...*"

42. That in the agreement (Paragraph 2) HFP's Managers agreed that it would use the Information solely for the purpose of determining whether to enter into the transaction and not for any other purpose or for "*the purpose of competing, directly or indirectly with PAT; including but limited to PAT's team of scientist, plasma physicists, heat recovery engineers, mechanical engineers, power supply sub-contractor, or their respective business entities that they may be associated, affiliated or employed at that would be intended to be utilizing their services for the same or similar business purposes as set forth herein.*"

43. That in the agreement (Paragraph 2) HFP's Managers agreed to "*limit dissemination of and access to the Confidential Information only to persons within Recipient's immediate organization (and not to subsidiary, parent or affiliated entities), and then only to those persons who have a verifiable need for access to the Information for the above-described purposes, and who have separately signed a copy of this Agreement.*"

44. That in the Agreement HFP and by and through its managing members and its CEO, agreed that its would not disclose any of the Information to its representatives unless they first obtained an agreement from its representative that they too would be bound by the terms of the Agreement, and that the managing members agreed that they would accept responsibility for any breach of the Agreement by HFP for any breach of the agreement by one of its employees, agents, and/or representatives.

45. That pursuant to Section 10 of the NCND Agreement, PLASMA ARC and Defendants further agreed that without the prior written consent of PLASM ARC, HFP would not directly or indirectly, at any time during the term of the Agreement contact or solicit any of the listed non-circumvent parties to enter into a business arrangement with HFP for any reason or purpose for a period of 36 (thirty-six) months.

46. That pursuant to Section 10 of the NCND Agreement, PLASMA ARC and Defendants further agreed that without the prior written consent of PLASM ARC, HFP would not enter into any agreement, arrangement or understanding with any persons regarding a possible transaction involving key personnel, proprietary technology or protected third parties.

47. That Section 11 of the NCND Agreement states the protected parties, persons and entities.

48. That pursuant to Section 12, there was a contracted and predetermined default remedy of $5,000,000.00 (Five Million Dollars) liquidated damages.

## COUNT ONE
## BREACH OF NON-CIRCUMVENT/NON-DISCLOSURE AGREEMENTS 1 & 2

49. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 48 above with the same force and effect as if set forth herein.

50. That at various times between January 2010, and October 2011, Defendants and/or its Managing members, employees, agents, and representatives breached the NCND Agreement by:

    a. Soliciting or otherwise inducing the key personnel, contracted scientists, protected third parties and/or key vendors to not consummate the transaction with PLASMA ARC or its Co-ventures;
    b. Interfering in numerous ways with the closing of various agreements between and among PLASMA ARC and its clients or purchasers;
    c. Interfering in numerous ways with the closing of various agreements between and among PLASMA ARC and its Sellers, vendors, equipment providers;
    d. Interfering in numerous ways with the closing of various agreements between and among PLASMA ARC and its scientific team, plasma physicists and quantum scientists and/or technicians;
    e. Directly, or indirectly contacting specifically listed protected personnel or parties to discuss the transaction and project without PLASMA ARC's consent or written permission;
    f. Directly, or indirectly entering into agreements, arrangements or understandings

      with specifically listed protected personnel, key contractors, specialized third parties;

  g. Directly, or indirectly entering into discussions with protected parties, which will lead to an agreement, arrangement, or business understanding;

  h. Directly, or indirectly entering into discussions with other persons (not classified as "protected parties" but covered under the NCND Agreement), which will lead to an agreement, arrangement or business understanding regarding a possible transaction to the adversity of PLASMA ARC;

  i. Disclosing Information to its representatives or clients without first obtaining written permission form PLASM ARC that they too would be bound by the terms of the NCND Agreement;

  j. Using the Information for material purposes and personal gain, and obtusely beyond those expressly identified an agreed to legitimate business purposes agreed to by the parties;

  k. Participating in other activities in violation of the terms and covenants of the Agreement.

51. That Defendants traveled from their New York City broker dealer office to North Carolina to surreptitiously meet with specifically listed, protect parties and discuss severing their business relationship with Plaintiff and pursuing a better and more profitable business opportunities with Defendants, HFP and BYRUCH.

52. That upon reliable information and belief, Defendants, HFP and BYRUCH have provided corporate and personal funds to specifically listed and contractually protected PLASMA ARC parties in direct and utter violation of the intent an purpose of the NCND Agreement between the parties.

53. That upon reliable information and belief, Defendants, HFP and BYRUCH have provided funds to contractually protected PLASMA ARC parties for the specific purpose to <u>design</u> a plasma-based thermal processing system to process metallurgic ore concentrate.

54. That upon reliable information and belief, Defendants, HFP and BYRUCH have provided funds to contractually protected PLASMA ARC parties for the specific purpose to <u>build</u> a plasma-based thermal processing system to process metallurgic ore concentrate.

55. That upon reliable information and belief, Defendants, HFP and BYRUCH have provided funds to contractually protected PLASMA ARC parties for the specific purpose to <u>operate and maintain</u> a plasma-based thermal processing system to process metallurgic ore concentrate.

56. That upon reliable information and belief, Defendants, HFP and BYRUCH have provided funds to contractually protected PLASMA ARC parties; and that such parties have as a result of Defendants conduct in violation of the NCND Agreement have built an operational plasma-based metallurgic recovery system for the purpose of processing ore concentrate owned by one of HFP's clients.

57. That upon reliable information belief, Defendants HFP and BYRUCH need desperately to process collateralized ore concentrate owned by one of its clients to repay outstanding debt holders of notes that are either currently in default and/or more and more notes falling into default each and every month.

58. That upon reliable information and belief, Defendants, HFP and BYRUCH have provided funds to protected PLASMA ARC parties for the specific purpose of trying to generate the revenues to pay back its debt holders by circumventing PLASMA ARC and attempting to use its "New York City pedigree" to set up their own advanced thermal processing system in a non-descript warehouse in North Carolina with PLASMA ARC protected parties.

59. That upon reliable information and belief, Defendants, HFP and BYRUCH have provided funds to protected PLASMA ARC parties that have indeed funded a plasma-based metallurgic recovery system in a non-descript warehouse in North Carolina.

60. That upon reliable information and belief, Defendants, HFP and BYRUCH specifically told contractually protected parties that they could not inform nor notify PLASMA ARC of their discussions, arrangement and/or agreements.

61. That upon reliable information and belief, Defendants, HFP and BYRUCH specifically told protected parties that they could no longer provide services to Plaintiff, PLASMA ARC, if they wanted to continue their current and future business relationship with Defendant's investment capital firm, HFP, and Defendant BYRUCH.

62. That upon reliable information and belief, Defendants, HFP and BYRUCH have acted in a manner that disclosed PLASMA ARC's trade secrets and confidential information.

63. That upon reliable information and belief, Defendants, HFP and BYRUCH have acted in a manner that has violated the Non-Compete covenant of the NCND Agreement.

64. That upon reliable information and belief, Defendants, HFP and BYRUCH have acted in a manner that has violated the Non-Circumvent covenant of the NCND Agreement.

65. That upon reliable information and belief, Defendants, HFP and BYRUCH have acted in a manner that has violated the Non-Disclosure covenant of the NCND Agreement.

66. That as a direct result of Defendants, HFP's and BYRUCH's breach of the NCND Agreement, PLASMA ARC's specifically identified and listed protected parties stopped responding to service requests to PLASMA ARC.

67. That as a direct result of Defendants, HFP's and BYRUCH's breach of the NCND Agreement, PLASMA ARC's specifically identified and listed protected parties failed to provide agreed services and equipment to PLASMA ARC.

68. That as a direct result of Defendants, HFP's and BYRUCH's breach of the NCND Agreement, PLASMA ARC has been left without a plasma physicist, scientist with unique knowledge of high temperature metallurgy, equipment fabricator and parts supplier to its plasma torch (a supplier critical to operate a specially design plasma torch).

69. That as a direct result of Defendants, HFP's and BYRUCH's breach of the NCND Agreement, PLASMA ARC has suffered and continue to suffer damages, including but not limited to lost profits.

70. **WHEREFORE**, Plaintiff respectfully request that this Honorable Court enter a Judgment against the Defendants in its favor and award contracted damages, plus prejudgment interest, costs, attorney fees and such other relief as this Court deems appropriate.

## COUNT TWO
## INJUNCTIVE RELIEF TO ENFORCE
## NON-CIRCUMVENT AN NON-DISCLOSURE AGREEMENT

71. That Plaintiff repeats an realleges each and every allegation contained in paragraphs 1 through 70 above with the same force an effect as if set forth herein.

72. That paragraphs 2, 10, and 11 of the January 26, 2010 and April 2, 2010 NCND Agreements provide for the Specific Performance of the covenants and agreements made by Defendants.

73. That Plaintiff has clear legal title to injunctive relief.

74. That Plaintiff has suffered and continues to suffer irreparable harm as a direct and proximate result of Defendants' aforementioned breach of the Agreement.

75. That the public is best served by the enforcement of the NCND Agreements and agreements of this type via injunctive relief.

76. **WHEREFORE**, Plaintiff respectfully request that this Honorable Court enter a permanent order of injunction against the Defendants restraining Defendants from continuing to violate the covenants of the Non-Circumvention an Non-Disclosure an Non-Compete agreements and awards costs, attorney fees and such other relief as this court deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff requests the following relief against Defendants, and each of them, as follows:

77. For this Honorable Court to enter a Judgment against the Defendants in its favor and award contracted damages, plus prejudgment interest, costs, attorney fees an such other relief as this Court deems appropriate;

78. For preliminary and permanent injunctive relief;

79. For such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues triable by right to a jury.

Respectfully Submitted,

Respectfully submitted,

_____/S/_____
*Chad Altieri, Esq.*
Altieri & Associates
201 S. Biscayne Blvd.
28th Floor
Miami, FL 33131
(305) 562-4981 tel.
(305) 913-7640 fax
FL Bar 49687
Dated this 22nd day of November, 2011